IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TIANNA CREEL                                                                                    PLAINTIFF

VS.                                                         CIVIL ACTION NO.:4:12-cv-89-MPM-JMV

HUMPHREYS COUNTY, MISSISSIPPI, ET. AL.                                          DEFENDANT

## REPORT AND RECOMMENDATION

This matter comes before the court on Defendants' Motion to Compel Consummation of Settlement Agreements [60] in this and the related case [18], *Creel v. Humphreys County, Mississippi, et al.*, 4:13-cv-67-MPM-JMV. The District Judge's Order [63] referred the instant motion to the undersigned Magistrate Judge for issuance of a Report and Recommendation regarding whether the settlement agreement in these cases should be enforced. Having conducted a hearing on the motions, the undersigned finds, for the reasons discussed below, that the settlement was valid and is binding and should be enforced.

These cases, asserting causes of action under § 1983, arise from, first, an alleged improper search of Plaintiff's rental home located in Isola, Mississippi, on February 24, 2012, and Plaintiff's alleged unlawful detention in connection therewith, and secondly, an alleged improper arrest of Plaintiff two months later.

The first search complained of was conducted pursuant to a warrant for the arrest of an adult African American male who was wanted for child abuse of his ten year old son. According to another of the child's relatives, the wanted male was staying with his reported girlfriend, Plaintiff, at her rental home in Isola.

When the officers arrived at Plaintiff's home, she refused them permission to search the residence. Plaintiff contends that as a consequence, the officers detained her while obtaining a

search warrant and then searched the home.  Plaintiff asserts that for the duration of the search she was held in handcuffs in the seat of an officer's vehicle in the driveway of the rental home.  She alleges that during the search the officers stole $2,000 cash, riffled through her personal effects, displaced ceiling tiles, and left the rental unit in shambles.  The fugitive was not found at the premises, though his driver's license was located in the home in plain view.  Plaintiff denied the fugitive was her boyfriend, or that he was staying in her home and testified his driver's license was there only because it had inadvertently fallen out of his pocket when he had earlier visited the home as a friend of a friend.  Plaintiff testified the Sherriff informed her, when she visited him after the search to complain about the search, that her home was searched and she was detained because his officers did not like the fact that she, a Caucasian, had a sexual relationship with an African American male.

Approximately two months later, in late April 2012, the U.S. Marshal Service and Mississippi Bureau of Investigations (MBI) officers received information that the fugitive was again staying with Plaintiff but at a different rental property, this one located in Hollandale, Mississippi approximately thirty miles from the former rental home.  When the officers approached Plaintiff's new home, Plaintiff, who was present, denied the fugitive was there, but after contacting her attorney, Boyd Atkinson, consented to the home's search.  The fugitive was found in her home and arrested.  Plaintiff testified she had not known the fugitive was in her home and that she had not knowingly lied to the officers about his presence there.  Indeed, Plaintiff asserts the fugitive just happened to be walking in her new neighborhood when he saw the MBI officers and U.S. Marshal Service approaching and, in an effort to hide, broke into a random house.  According to Plaintiff, it was just a remarkable coincidence that the home he

2

selected to hide in was hers, and it was the same home the informant had advised the fugitive was staying in.

Plaintiff asserts MBI requested she report to the Humphreys County jail for further questioning following the fugitive's arrest and was told by those officers she would not be charged. Plaintiff contends that after entering the jail, Deputy Dobbins, who had not been present for the search and the fugitive's arrest, told a dispatcher to "dress her out and put her in a cell." Defendants, on the other hand, assert Plaintiff was booked into jail on harboring a fugitive charges by MBI officers, not the defendant's officers. Deputy Dobbins, in particular, denies he gave any instruction to book Plaintiff, but he admits, approximately six days later, on May 1, while Plaintiff was still in custody, he signed a criminal affidavit against Plaintiff for rendering criminal assistance during the earlier search of her rental home. An arrest warrant was issued that same day on the affidavit and Plaintiff was bonded out. Apparently, the Humphreys County Grand Jury did not subsequently indict her, however.

Plaintiff filed suit on October 1, 2012, arising from the initial search and seizure which she asserts resulted in injury to her wrists and shoulder. On April 1, 2013, she filed a second suit for injuries, including depression, resulting from the April 2012 arrest.

A joint settlement conference was held before the undersigned magistrate judge in these related cases on September 17, 2013. Plaintiff was in attendance and represented by her counsel. After negotiations, Defendant offered a final sum of money to Plaintiff, and it was accepted in settlement of all claims.

The court entered a Minute Entry of the proceedings, evidencing the parties' settlement in both cases on September 17, 2013. *See* [Doc. 59]; *see also* [Doc. 17] in Civil Action No. 4:13-cv-00067-MPM-JMV. Thereafter, Defendants' counsel emailed a confidential Release of

3

Claims and Settlement Agreement to Plaintiff's counsel. Plaintiff's counsel then informed Defendants' counsel his client had informed him on the day after the settlement conference that she did not intend to consummate the settlement.

During the hearing on Defendant's motion to compel the settlement, Plaintiff's counsel offered Plaintiff, who testified, after some discussion of the remarkable series of coincidences outlined above, that her lawyer, Atkinson, told her in private during the settlement conference that she would not be bound by any settlement agreement reached at the conference. For his part, Atkinson represented to the court the contrary, affirming that he understood, and understood his client and the court to have understood, the settlement was final when reached at the settlement conference.

The aforementioned alleged representation of counsel to his client -- outrageous if in fact made -- is, in any event, not a basis to set aside this settlement agreement as -- *at best* -- it constitutes a unilateral mistake of fact, not a recognized ground for voiding an otherwise valid settlement agreement. *See Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 391 (5th Cir. 1984) ("[U]nilateral mistake of fact is not a basis for avoidance of a settlement agreement.")

Perhaps of even more concern to the undersigned -- in light of Plaintiff's obligation to testify truthfully under oath and her counsel's obligation of candor toward the court -- is Plaintiff's further testimony to the effect that not only did her attorney tell her in private she would not be bound to any settlement offer accepted at the conference, but that, in fact, she never agreed to accept Defendant's final settlement offer. This assertion is not only contradicted by her own counsel who has acknowledged Plaintiff accepted the settlement offer at the conference, but is contrary to the court's record, including both the very clear recollection of the undersigned and that of a highly repudiated law clerk, also present for the settlement negotiations. Moreover,

4

Plaintiff's assertion that she, in fact, never even purported to accept Defendants' final settlement offer is contradicted by her own testimony to the effect that on the morning after the conference she called her lawyer to inform him she was not going to go through with the settlement. To state the obvious, if Plaintiff had never even communicated her acceptance of an offer of settlement, she would have had no reason to phone her attorney the next day to instruct him she was backing out of the settlement. Moreover, if in fact, Plaintiff had never accepted an offer at the conference, why did she offer, by way of testimony in opposition to the motion to compel, the explanation that she believed, based on her counsel's advice, that her acceptance would not bind her to settle? In short, Plaintiff's credibility with the undersigned is worse than thread bare.

The district court "has inherent power to recognize, encourage, and when necessary enforce settlement agreements reached by the parties." *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994). "Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced." *Cia Anon Venezolana De Navegacion v. Harris*, 374 F. 2d 33, 35 (5th Cir. 1967) (en banc). Specifically, this court upholds settlements of claims when the Plaintiff has knowingly and voluntarily agreed. *See Bush v. Delta Reg'l Med. Ctr.*, No. 4:11-cv-87-A-V, 2012 U.S. Dist. LEXIS 160951, at *2-*3.

The undersigned Magistrate Judge presided over the settlement conference proceeding, and both the undersigned and my law clerk witnessed the agreement of Plaintiff to settle her case for the negotiated amount.[1] The court finds there was a knowing and voluntary agreement by Plaintiff to settle her claims. Therefore, it is recommended that Defendants' motion be granted

---

[1] The negotiated amount will be provided the court in camera in light of the parties' agreement at the conference to treat the amount as confidential.

and that Plaintiff be required to sign the Release of Claims and Settlement Agreement, as well as comply with the terms and conditions of that agreement.

The parties are referred to L. U. Civ. R. 72(a)(3) for the applicable procedure in the event any party desires to file objections to the findings and recommendations herein contained. The parties are warned any such objections are required to be in writing and must be filed within fourteen days of this date. Failure to timely file written objections to the proposed findings, conclusions and recommendations contained in this report will bar an aggrieved party, except upon grounds of plain error, from attacking on appeal unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Respectfully submitted this 23rd day of January, 2014.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**